**Ralph CHAMBERS and Grace Chambers, Plaintiffs and Appellants,**

v.

**Walter SATROM, Defendant and Respondent.**

**No. 8415.**

Supreme Court of North Dakota.

Dec. 8, 1967.

Rehearing Denied Jan. 11, 1968.

Stokes, Vaaler, Gillig & Warcup, Grand Forks, for plaintiffs and appellants.

Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, for defendant and respondent.

TEIGEN, Chief Justice.

The plaintiffs appeal from a judgment dismissing their complaint. The case was tried to the court without a jury and a trial de novo is demanded in this court pursuant to Section 28–27–32, N.D.C.C.

This action arose out of an automobile accident which occurred on September 12, 1963, in Fargo, North Dakota. The plaintiffs brought this action against the defendant seeking to recover for personal injuries, no claim being made as to property damage to the plaintiffs' automobile.

The accident took place on North University Drive (otherwise known as Highway 81 or North 13th Street), between 7th and 8th Avenues. The plaintiff Mrs. Chambers was a passenger in an automobile driven by her husband, also plaintiff herein. It appears that she had been a patient at St. Luke's Hospital and was being taken home by her husband who had journeyed to Fargo from Crystal, North Dakota, for that purpose.

The plaintiffs were proceeding north on University Drive at approximately 9:30 a. m. They both testified that they were forced to stop near the middle of the block when an automobile driven by Oscar Monroe, a witness herein, attempted to make a left turn into the Piggly Wiggly parking lot. It was the plaintiffs' testimony that they came to a complete stop about 20 feet behind the Monroe automobile, and that they had conversed for from three

to five minutes when they were struck from behind by the defendant's truck. This drove their vehicle forward causing it to strike the Monroe automobile. Mrs. Chambers, however, was turned in the seat, facing her husband and talking to him. She testified only that there was "an explosion of glass" and the car went forward bumping into another car. On cross-examination she admitted she was unable to testify as to the order in which the automobiles collided or whether she felt more than one impact. Regarding whether their automobile stopped a certain distance behind the Monroe vehicle, she was able to state only that it was their habit to "normally stay well behind a car that is parked at an intersection."

The defendant testified two cars were stopped ahead of him at the stop light on University Drive. When the light changed, the first two cars proceeded ahead and the defendant followed. He had attained a speed of about 10 miles per hour when he saw the cars ahead of him had stopped. He testified he then attempted to stop his truck and that, although he applied his brakes and turned to the right, he struck the right rear of the car immediately ahead of him with the left front of the truck, after laying down skid marks for a distance of from six to eight feet. It is developed from the testimony in the case that the car immediately ahead of the defendant, which the defendant struck, was operated by the plaintiff and that the car ahead of the plaintiffs' car, also stopped, was operated by Mr. Monroe.

Mr. Monroe also testified. He stated that he was attempting to make a left turn into the Piggly Wiggly store parking lot located on the west side of University Drive but was prevented from doing so by oncoming southbound traffic; therefore, he stopped in the traffic lane, put on his turn signal, and held his foot on the brake. He was hit from behind by the plaintiffs' automobile. Immediately thereafter he felt a second impact of lesser force. He further testified that he saw the plaintiffs'

automobile in the rearview mirror before it struck him and that, in his opinion, it was following too closely for the conditions then prevailing.

The trial court found that the plaintiff-husband struck the Monroe automobile first, and that the second impact felt by Mr. Monroe occurred when the defendant's truck struck the plaintiffs' automobile. It was the court's finding that the plaintiff-husband was contributorily negligent in that he followed the Monroe automobile too closely and did not keep a proper lookout. This caused the first collision and sudden stop, which in turn caused the second collision. This is a logical conclusion because had the Satrom truck hit the Chambers' automobile first Monroe would have felt only one impact. The court found that the defendant was also negligent in that he too was following too closely and was not keeping a proper lookout and, therefore, held that the plaintiff-husband's contributory negligence barred him from recovering. It was further held that Mrs. Chambers failed to sustain the burden of proof regarding damages; thus the complaint was dismissed as to her as well.

The plaintiffs argue the trial court was in error in finding the plaintiffs contributorily negligent. We have only the cold record before us. The trial judge hears and sees the witnesses and is in a much better position to pass upon their credibility.

Where an appeal is taken pursuant to Section 28–27–32, N.D.C.C., and the appellant demands a trial anew, the findings of the trial court must be given appreciable weight by the Supreme Court, especially when based upon testimony of witnesses who appeared in person before the trial court.

Goheen v. Gauvey, N.D., 122 N.W.2d 204.

The plaintiffs' first contention is that the trial court erred in holding the plaintiff Ralph Chambers guilty of contrib-

utory negligence. They contend that the defendant did not sustain the burden of proof as to contributory negligence. These contentions are without merit. The trial court chose to believe the testimony of a disinterested witness, Mr. Monroe, who testified on direct examination as follows:

Q. Could you tell us what happened after you stopped, Mr. Monroe?

A. I stopped and had my foot on the brake, my grandchild was sitting on the seat, and at the first impact my foot came off the brake, and at the second impact * * *

Q. You mean you felt two distinct impacts?

A. Two, yes.

Q. Would you describe these impacts, was one more severe or less severe than the other?

A. Pretty much the same, possibly the first one was a little harder because it took my foot off the brake and bounced me sitting in the seat.

Q. What caused these two impacts you have told us about?

MR. STOKES: Just a minute, we object to that as a conclusion.

THE COURT: Sustained.

MR. NILLES: Did a vehicle come in contact with your vehicle?

A. Yes, it did, in back.

Q. What car hit your car?

A. Chambers hit it, a Chevy.

Q. And then was there a second impact?

A. Yes, there was.

Q. And what was that between?

A. What do you mean, between?

Q. What caused the second impact?

MR. STOKES: Just a minute, we object again as a conclusion.

MR. NILLES: Did you observe any other vehicles coming together?

THE COURT: I guess he withdraws the question.

A. Yes.

MR. NILLES: What was the third vehicle?

A. What was the second impact?

Q. Uh-huh. What kind of vehicle was that?

A. That was a truck.

Q. Did you see the Chamber's vehicle before the accident occurred?

A. Yes, I did, through the rearview mirror.

Q. And what did you observe?

A. Well, I was watching closely to see if anything was going to happen, and, of course, I was watching the traffic from ahead, also, and there was two or three cars, I don't recall, I had to wait for before I could turn to the left.

Q. What did you observe, if anything, about the speed of the Chamber's vehicle?

A. I figured they were going a little too close for the condition of the street, and the traffic was awful heavy.

On cross-examination, Mr. Monroe testified as follows:

 *   *   *   *   *   *

Q. And you say you saw behind you the Chamber's vehicle approaching?

A. Yes.

Q. You did not see the Satrom vehicle approaching?

A. I seen it pretty near in the back.

Q. Did you see Mr. Satrom's truck approach?

A. Oh, no, I didn't.

Q. And you didn't see Mr. Satrom's truck strike Mr. Chamber's car?

A. Couldn't see.

Q. All you really know is that something hit your car?

A. That is right.

Q. And, of course, you just concluded that that was Mr. Chamber's car because that was right behind you.

A. Two impacts.

Q. Yes, but as far as the two impacts, you just know there was an impact, and then another impact shortly afterwards?

A. That is right.

Q. And insofar as you didn't see the Satrom truck strike Mr. Chamber's car * * *

A. That is right, I didn't see him strike him. I seen Chambers strike me.

Q. And that is all you know, is that the Chamber's car struck you?

A. That is all I know.

Q. All right, that is all.

The trial judge, in his memorandum opinion, assigned his reasons for holding against the plaintiffs as follows:

Considering the testimony of the parties as above recited, the Court is of the opinion that the plaintiff Ralph Chambers is guilty of contributory negligence which was a proximate cause of the accident and, therefore, is barred from recovery. The Court observed the witnesses and, as is the case in many of such instances, the testimony of the parties is largely in favor of their respective positions. However, the witness Oscar Monroe is a disinterested party as far as liability in this action is concerned. He was an eye witness who gave his testimony clearly and credibly. By hitting the rear end of the Monroe car,

the plaintiff Ralph Chambers was guilty of negligence in following the Monroe car too closely and of not keeping a proper lookout. This caused the sudden collision and sudden stop, which in turn precipitated the second collision. Of course the defendant was likewise following too closely and not keeping a proper lookout, but the plaintiff's contributory negligence bars him from recovery of any damages.

We have carefully reviewed the evidence, and, after giving the trial court's findings the appreciable weight to which they are entitled, we are unable to say that those findings are in error. The testimony of Mr. Monroe was that he saw the plaintiffs' automobile strike his automobile. He then felt a second impact which he believed was the defendant's truck striking the plaintiffs' automobile. This testimony was not varied on cross-examination, although Mr. Monroe admitted that he did not see the defendant's vehicle strike the plaintiffs' automobile. He also remained unshaken in his belief that the plaintiffs' collision with his automobile was the first impact and was followed by a second impact. From this it is reasonable that the trial court could find, as it did, that the plaintiffs' contributory negligence contributed proximately to his injuries, if any, and thus constituted a bar to recovery.

Secondly, the plaintiffs argue that the trial court erred in finding that the plaintiff Grace Chambers was not injured to some extent as a result of the defendant's negligence.

The trial court found only that the plaintiff Grace Chambers failed to sustain the burden of proof as to injury and damages occasioned by the accident. In its memorandum opinion, we find these statements made by the trial court:

* * * In the Doctor's examination of Mrs. Chambers, he testified that he found no spasm in the neck, though she made a complaint of pain, and that her neck had a normal range of movement. He also

testified he made no objective findings, and that all his findings were subjective. This meant that he could find nothing wrong with the plaintiff except that she complained of pain. The extent of her disability caused by pain becomes even more speculative in view of her testimony on direct examination that she was unable to do her housework and that her husband helped her in this effort because of a possible combination of laziness and pain. Under this state of the record the Court is left with pure conjecture in arriving at a conclusion that she was injured in the accident and suffered pain therefrom. Because of this unsatisfactory statement in the record in regard to her alleged injuries and the cause therefor, the Court is unable to say that she suffered any compensatory damages and the complaint must be dismissed as to her as well.

It should be noted that the doctor who treated the plaintiff, Dr. Story, was never called to testify, nor was his deposition taken. No attempt was made to introduce the records of his care and treatment. Mrs. Chambers testified that she had been under the care of a chiropractor as well but no evidence was submitted as to this. The doctor who examined Mrs. Chambers and testified at the trial, Dr. Halliday, did so only for purposes of evaluation. Thus, we have here a situation where the doctor who treated Mrs. Chambers did not testify and the doctor who testified did not treat her.

Further, we have reviewed the record and fail to find any evidence regarding doctor's bills, drug expense, or any other medical expense. In the state of the record, we agree with the trial court that the plaintiff Grace Chambers wholly failed to prove she suffered any injury or damage as a result of the accident here involved.

For the reasons heretofore set out, we affirm the judgment of the trial court.

STRUTZ, ERICKSTAD, KNUDSON and PAULSON, JJ., concur.